IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Charlotte N. Sweeney

Civil Action No. 24-cv-02504-CNS

T.J.G.,

     Plaintiff,

v.

COMMISSIONER, Social Security Administration,

     Defendant.

---

**ORDER**

---

Plaintiff T.J.G.[1] appeals the denial of his claim for disability insurance benefits (DIB) and supplemental security income (SSI). ECF No. 10 (Opening Br.); Administrative Record (A.R.) at 1312. For the reasons set forth below, the Court REVERSES the ALJ's denial and REMANDS for further proceedings.

## I.  BACKGROUND

Plaintiff first filed for DIB and SSI on March 26, 2010, alleging a disability onset date of January 29, 2009. A.R. at 325–35. Plaintiff alleged disability due to a left foot injury and depression. A.R. at 456–57. An ALJ dismissed Plaintiff's claim for the first time in December 2011. A.R. at 144–48. The Appeals Council remanded for a new hearing in September 2012. A.R. at 149–51. The ALJ then denied the claim in September 2013, and

---

[1] Pursuant to D.C.COLO.L.APR 5.2(b), Plaintiff T.J.G. is identified by his initials only.

the Appeals Council remanded again in March 2015. A.R. at 152–54, 171–73. Upon remand, the ALJ denied the claim in September 2015, and after Plaintiff appealed, Judge Marcia Kreiger of this Court reversed the denial in November 2017 and remanded the case. A.R. 13–35, 970–74. This pattern repeated, with the ALJ's denial occurring in May 2019, and this Court—this time Judge R. Brooke Jackson—again reversing the ALJ in August 2020. A.R. at 864, 1382–1400. The fifth hearing before the ALJ also resulted in a denial in July 2021, and the Appeals Council remanded. A.R. at 1406–47, 1448–51. Plaintiff's most recent hearing occurred in February 2023, after which the ALJ issued a decision on June 8, 2023, finding that Plaintiff was not disabled from the alleged onset date through the decision. A.R. at 1274–1323. The Appeals Council declined to assume jurisdiction, and so the June 2023 decision became final. A.R. at 1266–73.

Plaintiff's claims on appeal to this Court focus solely on his mental impairments and related functional limitations. And because these claims further focus only on the ALJ's decision itself and one examiner's report, the Court will only briefly summarize Plaintiff's treatment history. Beginning in April 2009, Plaintiff had a history of mental-health issues, including depression, anxiety, and occasional suicidal ideation. A.R. at 1295. Plaintiff suffered recurring grief after his parents' deaths and battled excessive alcohol use. A.R. at 1296–98. Throughout the adjudicated period, Plaintiff intermittently sought medical care and periodically managed his mental-health issues with medication. *Id.* Providers noted that he frequently had "flat affect." A.R. at 1284, 1295–97.

Relevant to this appeal, in September 2010, the Commissioner's nonexamining state agency physician, Tawnya Brode, Psy.D., reviewed the record and determined that

Plaintiff was "moderate[ly]" impaired in his ability to (i) carry out detailed instructions, (ii) maintain attention and concentration for extended periods, (iii) complete normal workweeks without interruptions from psychological based symptoms, and (iv) perform at a consistent pace without an unreasonable number and length of rest periods. A.R. at 129. Dr. Brode concluded that Plaintiff was "capable of simple tasks in a setting where productivity is not necessarily measured by pace." A.R. at 125.

Following the most recent hearing in February 2023, the ALJ used the five-step sequential analysis to determine whether Plaintiff was disabled for purposes of receiving benefits. At step one, the ALJ found both that Plaintiff had engaged in periods of substantial gainful activity since the alleged onset date and also that there were significant periods in which he had *not* engaged in substantial gainful activity. A.R. at 1280–81 (finding 2). At step two, the ALJ found that Plaintiff had severe impairments that included, as relevant here, major depressive disorder and anxiety. A.R. at 1281 (finding 3). At step three, the ALJ found that Plaintiff's impairments neither met nor medically equaled a "listing."[2] A.R. at 1282 (finding 4). The ALJ then determined that Plaintiff had the residual function capacity (RFC) to perform light work with the following mental restrictions:

> He can understand, remember, and carry out simple instructions that can be learned and mastered in up to 30 days' time or less. The work involves no production rate pace quotas. At such levels, he can maintain concentration, persistence, and pace; make simple work-related decisions; can plan and set goals; can adapt to routine workplace changes; can travel; and can recognize and avoid ordinary workplace hazards.

---

[2] A "listing" is "an impairment(s) that meets or equals one" listed in Appendix 1 found in 20 C.F.R. § Pt. 404, Subpt. P, App. 1. 20 C.F.R. § 404.1520(a)(4)(iii). A claimant will be found disabled without considering their age, education, or work experience when they have an impairment that qualifies as a "listing" and they meet the duration requirement. § 404.1520(d).

A.R. at 1286 (finding five). As will be relevant below, the ALJ summarized Plaintiffs' mental RFC as a restriction to "simple instructions that do not involve a production rate pace." A.R. at 1310. At step four, The ALJ found that, beginning September 2016, Plaintiff was capable of performing his past relevant work as a ticket taker as actually and generally performed.[3] A.R. at 1310–11 (finding six). Finally, at step five, the ALJ found that, prior to September 2016, and prior to turning age 55 in May 2019, Plaintiff could perform other light, unskilled jobs, which existed in significant numbers in the national economy, including jobs like mail clerk, office helper, and sewing machine operator.[4] A.R. at 1310–11 (finding six). Thus, the ALJ determined that Plaintiff was not considered disabled under the Social Security Act and denied his claim. A.R. at 1311–12.

Plaintiff challenges the ALJ's decision on two bases: (1) that the ALJ failed to account for all of Dr. Brode's limitations despite giving her opinion great weight; and (2) that the reasoning levels of the jobs identified by the vocational expert (VE)[5] exceeded the ALJ's determination that Plaintiff be limited to simple instructions. ECF No. 10 at 14–19. Plaintiff also requests the immediate award of benefits. *Id.* at 19–21.

---

[3] The ALJ noted that Plaintiff did not begin working as a ticket taker until well after the alleged disability onset date in January 2009, and so this work did "not qualify as past relevant work for the entire period at issue" under the regulations applicable at the time of the ALJ's decision A.R. at 1310; *see* 20 C.F.R. § 404.1560(b)(1) (defining past relevant work as "work that you have done within the past 15 years, that was substantial gainful activity, and that lasted long enough for you to learn to do it") (effective Aug. 24, 2012, to June 21, 2024). Thus, the ALJ found that the ability to perform past work as a ticket taker was only relevant to the time after he began this work in September 2016. A.R. at 1310–11.

[4] As noted above, Plaintiff's claim has had a long procedural history, and so Plaintiff's age category has changed twice since the alleged disability onset date, from a "younger person" to a "person of advanced age" as of May 2019, when he turned 55. *See* 20 C.F.R. § 404.1563(c)-(e). The ALJ ably addressed the nuanced implications of these changes in her decision. A.R. at 1310–11. Because Plaintiff's challenge turns on much narrower questions not involving these nuances, the Court foregoes cataloging them here.

[5] The ALJ used the VE's testimony as an evidentiary basis to render her decision about the types of jobs Plaintiff could perform.

## II.  LEGAL STANDARD AND STANDARD OF REVIEW

An individual is considered disabled under the Social Security Act if they are unable to do "any substantial gainful activity" due to any medically determinable physical and/or mental impairment that can be expected "to last for a continuous period of not less than 12 months." *Wall v. Astrue*, 561 F.3d 1048, 1051 (10th Cir. 2009) (quoting 20 C.F.R. § 416.905(a)). An individual bears the initial burden of establishing their disability. *See id.* at 1062. To determine whether an individual is disabled, ALJs use a five-step, sequential analysis that considers whether the individual:

(1)    is currently engaged in "substantial gainful activity";

(2)    has a "severe" impairment or impairments;

(3)    the impairment or impairments equals one of the impairments listed in the appendix of the relevant disability regulation;

(4)    the impairment or impairments prevent the individual from doing their past work; and

(5)    has the residual functional capacity (RFC) to perform other work in the national economy.

*Allen v. Barnhart*, 357 F.3d 1140, 1142 (10th Cir. 2004) (citing 20 C.F.R. § 404.1520(a)(4)). The burden to prove elements one through four falls on the plaintiff. *Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005). However, if the plaintiff "is not considered disabled at step three, but has satisfied their burden at steps one, two, and four, the burden shifts to the Commissioner" to show that the plaintiff has the RFC to perform other work in the national economy, taking into consideration their age, education, and work experience. *Id.* Prior to step four, the ALJ must formulate an RFC finding, considering the limiting effects of all the claimant's impairments. 20 C.F.R. §

404.1520(e); *Henrie v. United States Dep't of Health and Human Servs.*, 13 F.3d 359, 361 (10th Cir. 1993).

Exercising jurisdiction under 42 U.S.C. § 405(g), the Court reviews the Commissioner's decision to determine whether the factual findings are supported by substantial evidence and whether the ALJ applied the correct legal standards. *See Pisciotta v. Astrue*, 500 F.3d 1074, 1075 (10th Cir. 2007). "Substantial evidence" is evidence that is sufficient, based on the entire record, to support the ALJ's factual determinations. *See Biestek v. Berryhill*, 587 U.S. 97, 102–03 (2022). A district court must "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met," but will "not reweigh the evidence or retry the case." *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007). The threshold for this "evidentiary sufficiency is not high"; the evidence required is "more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek*, 587 U.S. at 103. Nonetheless, a decision is not based on substantial evidence if it is "overwhelmed by other evidence in the record." *Wall*, 561 F.3d at 1052 (internal quotations omitted). The Court must evaluate the grounds for the agency's decision "solely by the grounds invoked by the agency," and may not "affirm the administrative action by substituting what it considers to be a more adequate or proper basis." *Hackett v. Barnhart*, 475 F.3d 1166, 1174 (10th Cir. 2007). Courts may not "displace" an ALJ's "choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir.

2007) (quoting *Zoltanski v. F.A.A.,* 372 F.3d 1195, 1200 (10th Cir. 2004)). However, a decision not supported by substantial evidence must be reversed. *Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988).

### III.  ANALYSIS

Plaintiff argues that the ALJ's findings were not supported by substantial evidence because: (1) in formulating Plaintiff's RFC, the ALJ did not incorporate all of Dr. Brode's limitations despite giving her opinion great weight; and (2) at steps four and five, the ALJ erred by failing to resolve an inconsistency between limiting Plaintiff to "simple instructions" and the VE's testimony that Plaintiff could perform jobs that might require "detailed" instructions. ECF No. 10 at 14–19. Plaintiff also argues that these errors warrant an immediate award of benefits. ECF No. 10 at 19–21. The Court will address each issue below, concluding that substantial evidence does not support the ALJ's decision. However, the Court will not grant an immediate award of benefits.

### A.  Dr. Brode's Opinion

Plaintiff concedes that the ALJ properly accounted for "Dr. Brode's opinion that [P]laintiff's ability to understand, remember, and carry out detailed instructions was moderately impaired." ECF No. 10 at 14–15. However, Plaintiff contends that "the ALJ did not account for Dr. Brode's opinion that [P]laintiff's 'ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods' was moderately limited." *Id.* at 15 (quoting A.R. at 129).

Nonexamining physicians typically use the Mental RFC Assessment Form SSA-4734-F4-SUP to evaluate claimants' mental limitations and formulate an RFC conclusion for the ALJ's consideration.[6] Section I of that form is where physicians classify a claimant's relative limitations in several categories. *See* Program Operations Manual System (POMS) DI 24510.063.[7] Section III is where a physician records "the formal narrative mental RFC assessment." POMS DI 24510.065.

Defendant argues that ALJs should *only* "use the Section III narrative as the RFC assessment." ECF No. 12 (Response Br.) at 12 (quoting *Carver v. Colvin*, 600 F. App'x 616, 619 (10th Cir. 2015) and POMS DI 25020.010 B.1). Section I's purpose "is chiefly to have a worksheet to ensure [the physician] has considered each of [the] pertinent mental activities and the claimant's . . . degree of limitation." *Carver*, 600 F. App'x at 619 (quoting POMS DI 25020.010 B.1). Defendant argues that the ALJ adopted Dr. Brode's Section III and this therefore constitutes substantial evidence.

In Dr. Brode's Section III, she concluded that Plaintiff was "capable of simple tasks in a setting where productivity is not necessarily measured by pace." A.R. at 125. The ALJ found that Plaintiff could "understand, remember, and carry out simple instructions . . .

---

[6] Even though Dr. Brode did not use Form SSA-4734-F4-SUP, portions of her assessment clearly correspond to the relevant sections of that form. The parties refer to Dr. Brode's findings in ways that both explicitly and implicitly endorse this characterization. Consequently, because this framing aids the Court's analysis, the Court will adopt it here. And in the interest of efficiency, the Court will refer to the analogous sections as "Section I" and "Section III" below.

[7] The POMS provide guidance for ALJs in adjudicating social security matters. And although ALJs may reference POMS for this purpose, it "is not a primary source of policy, nor are its provisions binding on [ALJs]." *Cooperman v. Soc. Sec. Admin.*, No. 2022-1915, 2023 WL 3477288, at *1 (Fed. Cir. May 16, 2023), *cert. denied*, 144 S. Ct. 285 (2023). Consequently, the fact that Dr. Brode's assessment was not memorialized on Form SSA-4734-F4-SUP does not preclude the ALJ's reliance on Dr. Brode's assessment to reach her decision.

[with] work involv[ing] no production rate pace quotas." A.R. at 1286. It is true, then, the ALJ largely adopted Dr. Brode's Section III recommendation: "simple tasks" reasonably relates to "simple instructions," and both formulations restrict measuring productivity by pace. A.R. at 125, 1286.

Plaintiff argues, however, that Defendant reads *Carver* too narrowly. ECF No. 13 at 4 (Reply Br.). Although ALJs should use Section III as the formal RFC assessment,

> this does not mean that an ALJ can turn a blind eye to moderate Section I limitations. . . . [T]he POMS states that "[t]he degree and extent of the capacity or limitation must be described in narrative format in Section III [of the doctor's RFC assessment]." POMS DI 24510.063 B.2. . . . Thus, if a consultant's Section III narrative fails to describe the effect that each of the Section I moderate limitations would have on the claimant's ability, . . . the [doctor's RFC assessment] cannot properly be considered part of the substantial evidence supporting an ALJ's RFC finding.

*Carver*, 600 F. App'x at 619. Plaintiff asserts that Dr. Brode's Section III did not adequately describe the effect of Plaintiff's moderate limitation regarding his "ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods." A.R. at 129; ECF No. 13 at 4. Accordingly, Plaintiff argues, Dr. Brode's assessment could not "properly be considered part of the substantial evidence supporting [the] ALJ's RFC finding." ECF No. 13 at 4 (quoting *Carver*, 600 F. App'x at 619).

The Court finds that a "reasonable mind might accept," *Biestek*, 587 U.S. at 103, that Dr. Brode's Section III conclusion that Plaintiff was "capable of simple tasks in a setting where productivity is not necessarily measured by pace" is a sufficient narrative

description of Section I's moderate limitation regarding the ability "to perform at a consistent pace without an unreasonable number and length of rest periods." A.R. at 125, 129. Settings in which productivity is not measured by pace reasonably seem to accommodate a limitation regarding working at a consistent pace and would leave room for rest periods.

However, the Court finds that a reasonable mind would *not* accept that Dr. Brode's Section III conclusion is a sufficient narrative description of Section I's moderate limitation regarding the "ability to complete a normal workday and workweek without interruptions from psychologically based symptoms." A.R. at 125, 129. Dr. Brode's Section III conclusion has only two components: (1) being limited to simple tasks; and (2) non-pace-measured productivity. A.R. at 125. Neither mentions or refers to psychologically based symptoms nor reasonably describes how Plaintiff's moderate limitation related to completing workdays and weeks without interruptions from psychologically based symptoms is accommodated. If an ALJ does not include all of a nonexamining doctor's Section I limitations in her decision, the ALJ must explain why she rejected them. *Martinez v. Astrue*, 422 F. App'x 719, 724 (10th Cir. 2011). The ALJ provided no such explanation.

Defendant cites numerous cases to support the argument that the Court should not consider Section I when assessing whether the RFC comports with Dr. Brode's conclusions. ECF No. 12 at 13–14. These cases largely trace back to *Smith v. Colvin*, 821 F.3d 1264 (10th Cir. 2016), which held that an ALJ did not err by failing to repeat moderate limitations from a medical opinion because the limitations were incorporated into the medical opinion's RFC. For two reasons, *Smith* does not control here.

First, *Smith* conflicts with, but did not overrule, earlier Tenth Circuit precedent. *See Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007) (concluding that the "ALJ should have explained why he rejected four of the moderate restrictions on [a nonexamining physician's] RFC assessment while appearing to adopt the others"); *Frantz v. Astrue*, 509 F.3d 1299, 1302 (10th Cir. 2007) (stating that the "ALJ erred in accepting some of the moderate limitations in the Mental RFC form completed by [the] . . . nonexamining physician[] but rejecting others without discussion"). "[I]t is almost axiomatic that one panel of [the Tenth Circuit] cannot overrule another panel," *U.S. v. Moore*, 96 F.4th 1290, 1301 (10th Cir. 2024) (citing *U.S. v. Alvarez*, 142 F.3d 1243, 1247 (10th Cir. 1998)), unless there is "an intervening Supreme Court or en banc decision justifying such action." *Speidell v. U.S.*, 978 F.3d 731, 739 (10th Cir. 2020) (quoting *Lincoln v. BNSF Ry. Co.*, 900 F.3d 1166, 1183 (10th Cir. 2018)). There is no such decision related to *Smith*, and thus the Court elects to follow *Haga* and *Frantz*.

Second, even if *Smith* controlled here, it stands for a proposition that is narrower than what Defendant contends. *Smith* held that an ALJ did not err in failing to repeat moderate limitations from a nonexamining physician's Section I because the limitations were incorporated into the doctor's Section III. 821 F.3d at 1269. In other words, an ALJ *may* rely exclusively on Section III but only if it adequately accounts for the Section I limitations. The other cases Defendant cites confirm this conclusion.[8]

---

[8] *Paulsen v. Colvin*, 665 F. App'x 660, 666–67 (10th Cir. 2016) (citing *Smith* and stating "there was no need for the ALJ to repeat the [Section I] moderate limitations assessed . . . because the effects of the limitations were explained in [the Section III] narrative"; *Chavez v. Colvin*, 654 F. App'x 374 (10th Cir. 2016) (concluding that an RFC appropriately captured moderate limitations and citing *Smith* as its only reasoning); *Mahboub v. Saul*, No. CV 19-1216 JHR, 2021 WL 2209888, at *12 (D.N.M. June 1, 2021) (quoting *Smith*

Here, Dr. Brode's Section III simply did not account for Section I's moderate limitation regarding the "ability to complete a normal workday and workweek without interruptions from psychologically based symptoms." A.R. at 129. Thus, the ALJ was unable to rely exclusively on Dr. Brode's Section III.

Because the Court finds that Dr. Brode's Section III narrative did not adequately "describe the effect that each of [her Section I] moderate limitations would have" on Plaintiff's ability to perform a given type of work, her Section III assessment could not "properly be considered part of the substantial evidence supporting [the] ALJ's RFC finding." *Carver*, 600 F. App'x at 619. Reversal and remand are thus appropriate. *Williams*, 844 F.2d at 750.

## B. Plaintiff's Limitation to "Simple Instructions" and the Reasoning Levels of the Jobs the ALJ Identified

Plaintiff next argues that the ALJ erred by failing to resolve an inconsistency between Plaintiff's RFC limitation to simple instructions and the VE's testimony on which the ALJ relied to conclude that Plaintiff could perform jobs with detailed but uninvolved instructions. ECF No. 10 at 16–19. The Court agrees.

---

and noting that the "Tenth Circuit has made clear that, *so long as* a consultant's Section III findings reflect Section I limitations, a reviewing court is to 'compare the administrative law judge's findings to [the doctor's] opinion on residual functional capacity, not her notations of moderate limitations'") (emphasis added); *Sanchez v. Berryhill*, No. CV 16-1160 KK, 2018 WL 1064570, at *12–13 (D.N.M. Feb. 23, 2018) (citing *Smith* and concluding that the examiner's Section III "adequately captured the limitations found in [their] Section I"); *Duran v. Berryhill*, No. 1:18-CV-349-KRS, 2019 WL 1568139 (D.N.M. Apr. 11, 2019) (concluding that a Section III adequately accommodated Section I limitations where the Section III conclusion was relatively robust); *Nelson v. Colvin*, 655 F. App'x 626 (10th Cir. 2016) (concluding that a roughly one-to-one relationship between the Section I limitations and Section III conclusion was adequate encapsulation (i.e., Section I limitations regarding: (1) "maintain[ing] attention and concentration"; (2) "understand[ing]," remember[ing]," and "carry[ing] out detailed instructions"; and (3) "interact[ing] with the public"; and a Section III that stated the claimant could: (1) "adapt to a work situation"; (2) "carry[] out simple instructions with routine supervision"; and (3) "interact[] appropriately with supervisors and coworkers on a superficial basis but not with the general public")).

The Dictionary of Occupational Titles (DOT) guides the adjudication of Social Security matters. The DOT assigns one of six "reasoning development" levels to each job listed. DOT, App. C, § III, 1991 WL 688702 (4th ed. 1991). Level one is the simplest, and level six is the most complex. *Id.* As will be relevant below,

- "level one requires that a person "[a]pply commonsense understanding to carry out *simple one- or two-step instructions*";

- level two requires that a person "[a]pply commonsense understanding to carry out *detailed but uninvolved written or oral instructions*"; and

- level three requires that a person "[apply] commonsense understanding to *carry out instructions furnished in written, oral, or diagrammatic form*."

*Id.* (emphases added).

Under 20 C.F.R. § 404.1566(e), if a claimant's factual scenario is complex, an ALJ may use a VE to determine whether the claimant is disabled. *Haddock v. Apfel*, 196 F.3d 1084, 1089 (10th Cir. 1999). But when expert testimony conflicts with the reasoning levels set forth in the DOT, an "ALJ must investigate and elicit a reasonable explanation for [the] conflict . . . before the ALJ may rely on the expert's testimony as substantial evidence . . . ." *Id.* at 1091.

During the most recent hearing, the ALJ asked the VE about a hypothetical person with Plaintiff's age, education, work experience, and RFC, including limitations to simple instructions. A.R. at 1346–49 (hearing testimony). Regarding the step-four analysis, the VE testified that this hypothetical person could perform Plaintiff's past work as a ticket taker (level-two reasoning). *Id.* Regarding the step-five analysis, the VE testified that such

an individual could perform the following jobs: mail clerk (level-three reasoning); sewing machine operator (level-two reasoning); and office helper (level-two reasoning). *Id.* The VE testified that her opinion was consistent with the DOT, except for physical limitations not relevant here. *Id.* The ALJ cited this testimony to find against Plaintiff at steps four and five. A.R. at 1310–11. Plaintiff contends that the ALJ's finding that Plaintiff was limited to simple instructions conflicts with the reasoning levels of the jobs the VE identified, i.e., level-three and level-two reasoning. ECF No. 10 at 16–19.

Defendant concedes that caselaw supports Plaintiff's argument that level-three reasoning conflicts with simple instructions. *See* ECF No. 12 at 18. The Tenth Circuit has held that limitations to "simple and routine work *tasks* . . . seems inconsistent with the demands of level-three reasoning," *Hackett v. Barnhart*, 395 F.3d 1168, 1176 (10th Cir. 2005) (emphasis added), and later extended this reasoning to hold that level-three-reasoning jobs were inconsistent with simple *instructions*. *Paulek v. Colvin*, 662 F. App'x 588, 594 (10th Cir. 2016). Other circuits agree.[9]

 However, whether level-two-reasoning jobs (e.g., sewing machine operator and office helper) are consistent with simple instructions is unresolved in the Tenth Circuit. Plaintiff argues that applying *Paulek* to level-two reasoning is warranted and points to *Paulek*'s incorporation of *Lucy v. Chater,* 113 F.3d 905 (8th Cir. 1997), as support. ECF No. 10 at 17. *Lucy* held that a limitation to simple instructions was inconsistent with level-two and level-three reasoning. 113 F.3d at 909. Plaintiff also cites several district court

---

[9] *Buck v. Berryhill*, 869 F.3d 1040, 1051 (9th Cir. 2017) (reasoning that an ALJ should not have relied on level-three-reasoning jobs for a claimant limited to "simple instructions"); *Keller v. Berryhill*, 754 F. App'x 193, 198 (4th Cir. 2018) (concluding "that an apparent conflict exists between a limitation to short and simple instructions" and level-three-reasoning jobs).

cases that applied *Lucy*'s reasoning to support finding that level-two reasoning conflicts with limitations to simple instructions.[10] ECF No. 10 at 18–19.

Defendant marshals other cases to argue that there is no conflict. ECF No. 12 at 20–22. *Buckwalter v. Acting Commissioner of Social Security* held that there was no apparent conflict between "simple instructions" and level-two-reasoning jobs. 5 F.4th 1315, 1323 (11th Cir. 2021). Although the Eleventh Circuit panel admitted that it was a "close question," it followed previous decisions from the Fourth and Eighth Circuits[11] that held the same "because 'detailed' indicates length rather than complexity, and 'uninvolved' . . . denotes a lack of complexity." *Id.* Put differently, the panel found that there was no conflict because it determined that "simple" and "uninvolved" were correlated *and* synonymous. Defendant also points out that the Eighth Circuit recently identified the proposition Plaintiff highlights in *Lucy* as "dicta." ECF No. 12 at 20 (quoting *Galloway v. Kijakazi*, 46 F.4th 686, 690 (8th Cir. 2022)). *Galloway* cited an earlier Eighth

---

[10] *A.K.G. v. Comm'r of Soc. Sec.*, No. 23-CV-00218-NYW, 2023 WL 8529431, at *6–7 (D. Colo. Dec. 8, 2023) (citing *Paulek*'s incorporation of *Lucy and* reversing because "the ALJ did not discuss the apparent conflict or reconcile that conflict in his decision"); *C.H.C. v. Comm'r, Soc. Sec. Admin.*, No. 20-CV-02428-KLM, 2022 WL 950433, at *6–8 (D. Colo. Mar. 29, 2022) (citing *Paulek*'s incorporation of *Lucy* and "ultimately agree[ing] with the *Dugan* court's persuasive reasoning in the absence of any binding authority to the contrary); *Dugan v. Berryhill*, No. 17-2165-SAC, 2018 WL 1400448, at *5–6 (D. Kan. Mar. 20, 2018) (citing *Paulek*'s incorporation of *Lucy* and finding that "[o]n its face, the language for" level-two reasoning "reasonably appears to conflict" with simple instructions and holding that the ALJ erred by failing to resolve the conflict ).

[11] *Moore v. Astrue*, 623 F.3d 599, 604–05 (8th Cir. 2010) (finding that level-two reasoning referred to "'detailed but *uninvolved*' instructions" and defined "'uninvolved' as 'not . . . complicated [or] intricate'" (citing *Webster's Third New Int'l Dictionary* 1191, 2499 (2002) (emphasis in original)); *Lawrence v. Saul*, 941 F.3d 140, 143–44 (4th Cir. 2019) (finding that "detailed instructions" are more "correlated . . . with length" and thus there was "no conflict between 'simple' and 'uninvolved' instructions, as both connote instructions that 'are not complicated or intricate'" (quoting *Moore*, 623 F.3d at 604)). *See also Leach v. Kijakazi*, 70 F.4th 1251, 1256–57 (9th Cir. 2023) (finding that the "key distinction between" level-one and level-two reasoning is the length of the instructions and citing *Lawrence* to support its conclusion that a level-two-reasoning job with detailed but uninvolved instructions might reasonably "require an employee to follow <u>lengthy</u> simple instructions" (underlined emphasis in original)).

Circuit case that found no conflict between simple instructions and a VE's "identification of occupations involving instructions that, while potentially detailed, are not complicated or intricate." *Id.* (quoting *Moore v. Astrue*, 623 F.3d 599, 604 (8th Cir. 2010) (internal quotation marks omitted)).

Although the Eighth Circuit has not explicitly overruled *Lucy*, this Court is persuaded that it is nevertheless problematic. *See Moore*, 623 F.3d 599; *Galloway*, 46 F.4th 686.[12] The Court agrees with the portion of *Buckwalter*'s analysis that found that simple is correlated with uninvolved and relates to complexity, and detailed is correlated with one- and two-step instructions and relates to length. *See* 5 F.4th at 1323–24. So, contrary to Plaintiff's assertion, simple and detailed are categorically different and cannot be inconsistent.

However, despite *Lucy*'s problems, they do not, as Defendant argues, go so far as to defeat Plaintiff's claim on appeal. Although simple correlates with uninvolved and not detailed, (1) there is still an inescapable facial discrepancy between "simple" and "uninvolved"[13]; and (2) "simple" and "uninvolved" are not as synonymous as the other portions of *Buckwalter*'s analysis suggest.[14]

First, even assuming arguendo that simple and uninvolved mean something close

---

[12] The Court also notes that unlike *Buckwalter*'s more thorough reasoning, *Lucy* gave a perfunctory and partial explanation of the differences between level-one and level-two reasoning, noting only that the former "requires the ability to understand and carry out simple instructions, whereas . . . reasoning level two requires the ability to understand and carry out detailed instructions." *Lucy,* 113 F.3d at 909. *Lucy* omitted other key components of these definitions from its analysis—namely "one- and two-step" and "uninvolved," respectively—and implied that "simple" and "detailed" are different species of a common genus but gave no reasoning to support its interpretation. *Id.*
[13] *See C.H.C.*, 2022 WL 950433, at *6–8; *Dugan*, 2018 WL 1400448, at *5–6.

[14] The other circuit decisions Defendant cites largely mirror *Buckwalter*'s reasoning, and so the Court's disagreement—and the reasoning supporting it—applies to these other decisions as well.

to the same thing, it remains true "that based on the plain language" of the DOT definitions, "a limitation to 'simple' instructions is more in line with jobs requiring level-one reasoning, rather than level-two." *M.D. v. Kijakazi*, No. 21-CV-01963-NYW, 2022 WL 3227621, at *13 (D. Colo. Aug. 10, 2022) (citing *C.H.C. v. Comm'r, Soc. Sec. Admin.*, No. 20-CV-02428-KLM, 2022 WL 950433, at *8 (D. Colo. Mar. 29, 2022)). That is, there is a facial discrepancy between the words simple and uninvolved, and only the definition for level-one reasoning contains the word simple. The ALJ *could* have limited Plaintiff to jobs with "uninvolved instructions," but she did not. This created a conflict between Plaintiff's RFC and the VE's testimony that the ALJ left unexplained. And left unexplained, she could not rely on the VE's testimony as substantial evidence. *Haddock*, 196 F.3d at 1091.

Second, simple and uninvolved are not, as *Buckwalter* implied, synonymous. *Buckwalter* noted that "'[s]imple' is listed as an antonym for 'involved.'" 5 F.4th at 1323. This does indicate opposition, but it does not follow that *un*involved is a synonym of simple—i.e., that "'uninvolved' . . . denotes a lack of complexity." *Id.* To demonstrate why, imagine a complexity spectrum: on one end, lacking any complexity and rated 0, is simple (which *Buckwalter* defined as "readily understood or performed"); on the other end, rated 10, is involved (which *Buckwalter* defined as "marked by extreme and often needless or excessive complexity"). *Id.* (citing *Simple*, *Uninvolved*, *Involved*, Merriam-Webster's Online Dictionary, https://www.merriam-webster.com). Uninvolved, i.e., *not* involved, encompasses everything on the spectrum short of involved. It does encompass simple,

i.e., 0, but it also encompasses everything rated 2–9, too.[15]

Defendant contends that simple and uninvolved are synonyms and thus not inconsistent. ECF No. 12 at 21 (citing *Buckwalter*, 5 F. 4th at 1323; *Moore* 623 F.3d at 604; *Galloway*, 46 F. 4th at 690). But the complexity spectrum reveals that an uninvolved instruction might be one rated 9, i.e., an instruction just short of one "marked by extreme and often needless or excessive complexity"; so *only* simple (rated 0) "denotes a lack of complexity," *not* uninvolved (rated anywhere from 0–9). *Buckwalter,* 5 F.4th at 1323. Consequently, simple and uninvolved are *not* synonymous, even if they both relate to complexity.

It is certainly true that a "key distinction between" level-one and level-two reasoning is the length of the instructions. *Leach v. Kijakazi*, 70 F.4th 1251, 1256 (9th Cir. 2023) (distinguishing between level-one jobs that require "instructions involving at most two steps," and level-two jobs that may require "'detailed'—that is, potentially longer— instructions"). However, this cannot be the *only* distinction because, if the *length* of instructions differs between levels one and two based on the use of different words in their definitions, it reasonably follows that, for the same reason, the *complexity* differs too.[16] Put another way, the gradation inherent in the reasoning levels, and the fact that

---

[15] At play here is the distinction between polar and logical opposites. Simplifying a bit, an antonym of *X* word is its polar opposite, whereas the negation of *X* word is its logical opposite. Take an example: the polar opposite of hot is cold—cold exists on the opposite end of the spectrum from hot, and *only* there. However, the logical opposite of hot is *not* hot, which, in addition to cold, encompasses cool, lukewarm, warm, etc.—i.e., everything on the spectrum *except* hot. Thus, assuming *X* word, synonyms are similar words that exist *only* at the same end of the spectrum as *X* word; so, e.g., a synonym of cold is frigid, while not hot is *not* a synonym as described above. Therefore, here, uninvolved cannot be a synonym of simple.

[16] One might reasonably interpret each reasoning-level like this: level one limits a claimant to simple instructions (i.e., 0 on the spectrum); level three does not limit complexity, and so this corresponds to

each definition uses different words, demonstrates that there are indeed meaningful differences between simple and uninvolved instructions. Consequently, there is a conflict between Plaintiff's RFC, which limits him to simple instructions, and the jobs the VE identified, which require compliance with uninvolved instructions.[17]

The Court declines to find that a limitation to simple instructions is *always* incompatible with jobs requiring level-two reasoning.[18] But when an ALJ faces such a conflict between the reasoning levels defined in the DOT and her RFC limitation, she must address the conflict in her decision. *Haddock*, 196 F.3d at 1091. Because the ALJ here

---

involved instructions (i.e., 10); level two, which limits a claimant to uninvolved instructions, most reasonably falls somewhere in the middle (i.e., 5).

[17] Defendant cites numerous district court cases to refute this conclusion, but all are distinguishable or rely on the reasoning rejected above. *Rainwater v. Colvin*, No. 15-CV-491-GKF-FHM, 2016 WL 11468941, at *2 (N.D. Okla. Sept. 21, 2016), *report and recommendation adopted,* No. 15-CV-491-GKF-FHM, 2016 WL 6561298 (N.D. Okla. Nov. 4, 2016) (equating "simple" and "uninvolved"); *Roth v. Colvin*, No. CIV-16-0002-D, 2017 WL 394676, at *9 (W.D. Okla. Jan. 11, 2017), *report and recommendation adopted,* No. CIV-16-2-D, 2017 WL 395215 (W.D. Okla. Jan. 27, 2017) (conflating "instructions" with "tasks"); *Dana L. T. v. Kijakazi*, No. 22-CV-370-JFJ, 2023 WL 5938747, at *3 (N.D. Okla. Sept. 12, 2023) (addressing only a challenge regarding "simple tasks"); *George Paul B. v. Kijakazi*, No. CV 21-2075-JWL, 2022 WL 1684670, at *7 (D. Kan. May 26, 2022) (finding no conflict between level-two reasoning and simple instructions because: (1) *Paulek* is not binding; (2) it addressed only level-three reasoning; and (3) it incorporates *Lucy*, which is also not binding); *Karen Jean M. v. Saul*, No. CV 19-2455-JWL, 2020 WL 5057488, at *13 (D. Kan. Aug. 27, 2020) (reasoning on very technical differences between the DOT definitions and the plaintiff's RFC, which allowed her to "carry out detailed but uninvolved instructions"); *Ashley I. S. C. v. Kijakazi*, No. 22-CV-00201-SH, 2023 WL 5628598, at *8 (N.D. Okla. Aug. 31, 2023) (equating "simple" and "uninvolved"); *Ray v. Comm'r of Soc. Sec.*, No. CIV-18-00638-SM, 2019 WL 1474007, at *5 (W.D. Okla. Apr. 3, 2019) (finding that "on its face," level-two reasoning does not conflict with limitation to "simple work-related instructions"); *Dickson v. Saul*, No. CIV-19-248-SM, 2019 WL 5684513, at *3 (W.D. Okla. Nov. 1, 2019) (substantially the same); *Sorge v. Berryhill*, No. CV 16-64 GJF, 2017 WL 3822077, at *13 (D.N.M. Aug. 30, 2017) (conflating "tasks" with "instructions").

[18] *See C.H.C.*, 2022 WL 950433, at *8 (D. Colo. Mar. 29, 2022); *M.D. v. Kijakazi*, No. 21-CV-01963-NYW, 2022 WL 3227621, at *13 (D. Colo. Aug. 10, 2022). The Court notes that it has previously declined to find that a limitation to simple instructions is *always* incompatible with jobs requiring level-two reasoning. *See R.B. v. Kajakazi.*, No. 1:21-CV-00917-CNS (D. Colo. Mar. 22, 2023). In *R.B.*, as well as *M.E. v. Comm'r, Soc. Sec.*, No. 1:21-CV-00337-CNS, 2023 WL 2674419 (D. Colo. Mar. 29, 2023), the Court addressed whether limitations to simple instructions were consistent with level-two reasoning and concluded, as here, that they were not consistent. Although the Court partially relied on *Lucy* in these previous cases, it also leveraged the reasoning from *M.D.* highlighted above (i.e., that there is a facial discrepancy between simple instructions and the definition for level-two reasoning). Although the Court no longer finds *Lucy* persuasive, the Court is confident, as detailed above, in concluding in the case at issue that simple instructions are inconsistent with level-two reasoning absent detailed explanation from the ALJ.

did not provide an explanation for the conflicts between the limitation to "simple instructions" and both the level-two- and level-three-reasoning jobs the VE identified, she could not rely on the VE's testimony as substantial evidence for her decision. *See id.* Consequently, reversal and remand are appropriate. *Williams*, 844 F.2d at 750; *C.K.D. v. Kijakazi*, 21-CV-02155-NYW, 2022 WL 42900472, at *6 (D. Colo. Sept. 16, 2022).

### C.  Plaintiff's Request for the Immediate Award of Benefits

Plaintiff argues that an immediate award of benefits is warranted. ECF No. 10 at 19–20. If "additional fact finding would serve no useful purpose," then "outright reversal and remand for immediate award of benefits is appropriate." *Dollar v. Bowen*, 821 F.2d 530, 534 (10th Cir. 1987). The Court acknowledges the frustration that must have accrued in the 14 years this claim has been pending. But the Court finds that additional fact finding would indeed serve a useful purpose, namely: (1) whether an RFC can be adequately formulated to properly account for Dr. Brode's Section I limitations; and (2), so formulated, whether Plaintiff can perform other work in the national economy at step five. Because additional fact finding is warranted, the immediate award of benefits is inappropriate.

### IV. CONCLUSION

For above reasons outlined above, the Court REVERSES the Commissioner's decision denying Plaintiff's SSI and DBI and REMANDS for further proceedings consistent with this order.

Dated this 7th day of July 2025.

BY THE COURT

Charlotte N. Sweeney
United States District Judge